**BORNEO SUMATRA TRADING CO., Inc.**

v.

**UNITED STATES.**

**C.D. 3289; Protest 59/17126–24353–58.**

United States Customs Court,
First Division.
Feb. 7, 1968.

Siegel, Mandell & Davidson, New York City (Murray Sklaroff and David Serko, New York City, of Counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris, New York City, trial attorney), for defendant.

Before WATSON and BECKWORTH, Judges.

WATSON, Judge:

The merchandise in the case at bar consists of certain woven fabrics, weighing over 4 ounces per square yard, containing more than 17 percent by weight, but not in chief value of wool, the re-mainder of the fabrics being composed of manmade fibers.

The fabrics in question were classified under the provisions of paragraph 1122 of the Tariff Act of 1930, classification under said paragraph not being in dispute. On liquidation, the collector assessed duty on the wool portion of the fabrics at the rate of 37½ cents per pound, plus 45 per centum ad valorem. Plaintiff's sole claim herein is that the assessment of duty on the wool portion of the fabrics was invalid and illegal, and contrary to the directive contained in Presidential Proclamation No. 3160; and that the wool portion should have been assessed at the reduced rate established by the General Agreement on Tariffs and Trade, T.D. 51802, pertaining to paragraph 1108 and 1109(a) of the act, namely, 37½ cents per pound, plus 25 per centum ad valorem, there being no dispute with respect to the assessment on the manmade fiber portion of the product.

The case was submitted on an oral stipulation of facts, the pertinent parts of which are as follows:

1. The merchandise at bar consists of woven fabrics over 4 ounces per square yard, said fabrics composed of wool and manmade fibers.

2. Said fabrics contain more than 17% in weight of wool but are not in chief value of wool.

3. Said fabrics were classified under the provisions of paragraph 1122, Tariff Act of 1930, the paragraph of classification being not in dispute.

4. The merchandise was entered under Entry 736473 of August 14, 1957, and liquidated on October 2, 1958. In liquidation the Collector assessed duty at 37½¢ per lb. plus 45 per centum ad valorem, on the wool proportion of the fabric and it is plaintiff's sole claim that the reduced rate established by General Agreement on Tariffs and Trade, T.D. 51802, pertaining to paragraphs 1108 and 1109 (a), that is, 37½¢ per lb. plus 25 per centum ad valorem, should have been

assessed on the wool portion, there being no dispute with respect to the assessment on the man-made fiber portion of the product.

5. The pertinent facts pertaining to the establishment of the wool quota under Paragraphs 1108 and 1109(a), including presidential proclamations, effective dates and quota quantities and rates, are as set forth in Inter-Maritime Forwarding Co., Inc. v. United States, 51 C.C.P.A. 95, C.A.D. 843, and the record in that case may be incorporated in the record herein.

The pertinent portions of the statutes and rate modifications herein involved are as follows:

Paragraph 1122, Tariff Act of 1930:

Fabrics (except printing-machine cylinder lapping in chief value of flax), in the piece or otherwise, containing 17 per centum or more in weight of wool, but not in chief value thereof, and whether or not more specifically provided for, shall be dutiable as follows:

That proportion of the amount of the duty on the fabric, computed under this schedule, which the amount of wool bears to the entire weight, plus that proportion of the amount of the duty on the fabric, computed as if this paragraph had not been enacted, which the weight of the component materials other than wool bears to the entire weight.

Paragraph 1109(a), as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, regardless of value * * * 37½¢ per lb. and 25% ad val.

"Wool Fabrics Reservation" qualifying the modification of rates under paragraphs 1108 and 1109(a), Tariff Act of 1930, under the General Agreement on Tariffs and Trade, T.D. 51802:

NOTE: The United States reserves the right to increase the ad valorem part of the rate applicable to any of the fabrics provided for in item * * * 1109(a) of this Part to 45 per centum ad valorem on any of such fabrics which are entered in any calendar year in excess of an aggregate quantity by weight of 5 per centum of the average annual production of similar fabrics in the United States during the 3 immediately preceding calendar years.

Presidential Proclamation No. 3160, T.D. 54212, in pertinent part:

WHEREAS I find that upon invocation of the said reservation set forth in the second recital of this proclamation, effective October 1, 1956, it will be appropriate to carry out the trade agreement specified in the first recital of this proclamation that the ad valorem part of the rate be 45 per centum ad valorem in the case of any of the fabrics described in the said item 1108 or 1109(a) in Part I of Schedule XX to the General Agreement on Tariffs and Trade set forth in the second recital of this proclamation, or in the said item 1109(a) in Part I of Schedule XX to the Torquay Protocol set forth in the fourth recital of this proclamation *excepting in either case articles dutiable at rates applicable to such fabrics by virtue of any provision of the Tariff Act of 1930, as amended, other than paragraph 1108 or 1109(a)*: [Italics ours.]

Relative to Presidential Proclamation No. 3160 (T.D. 54212), the Commissioner of Customs in a directive dated October 8, 1956, to Collectors of Customs and others concerned, interpreted said proclamation and issued certain instructions as follows:

*       *       *       *       *       *

(4) articles classifiable under paragraph 1119 of the Tariff Act of 1930, as modified, are not affected by the quota or duty rate provisions of the proclamation;

(5) articles provided for in the proviso to paragraph 1111 and articles provided for in paragraph 1122 of the

Tariff Act of 1930 are not subject to the quota limitations provided for in the proclamation but are subject to the increased ad valorem duty when entered, or withdrawn, for consumption after the quota for the period is filled.

The quota breakpoint during the calendar year 1957 was reached, in accordance with the procedures directed by this proclamation, on July 25, 1957, at 3:07 p. m. e. s. t. Inter Maritime Forwarding Co., Inc. v. United States, 48 Cust.Ct. 80, C.D. 2318, affirmed in Inter Maritime Forwarding Co. v. United States, 51 CCPA 95, C.A.D. 843.

As heretofore indicated, the merchandise in question was a blended fabric consisting of wool and other fabrics, and the collector, following the directions in paragraph 1122 of the Tariff Act of 1930, applied one rate to the wool proportion and another rate to the other fiber. Counsel for the plaintiff in its brief maintains that when the collector liquidated the involved merchandise, he improperly assessed a quota rate on the wool portion of the fabric in that the "excepting" provision in Presidential Proclamation No. 3160, supra, specifically excludes from the application of the higher rate merchandise classifiable by virtue of paragraph 1122; and that the Commissioner sought to limit the President's authority in proclaiming certain rates of duty.

It seems clear that when the Tariff Act of 1930 was originally enacted, the rates applying to fabrics classifiable by virtue of paragraph 1122, determined by reference to other paragraphs, were the ones set forth under those paragraphs in the tariff act itself. After the General Agreement on Tariffs and Trade went into effect, the modified rates thereby established under paragraphs 1108 and 1109(a) were applied to merchandise covered by paragraph 1122. Defendant in this case maintains, however, that when merchandise is classifiable by virtue of paragraph 1122 of the tariff act, the rate of duty is one derived from or which "swings with" another paragraph, here paragraph 1108 or 1109(a); that the rate applicable is one "prevailing" under that paragraph at the time of entry, and that, accordingly, the prevailing rate at the time of entry herein, was 37½ cents per pound, plus 45 per centum ad valorem, the rate at which the merchandise was assessed.

In the above connection, defendant in effect maintains that, where merchandise is dutiable by reference to other paragraphs, it is the current rate under those paragraphs which applies, unless, for instance, the trade agreement negotiators "untied" the derivative rate provision from the reference paragraph. Defendant notes that paragraph 1119, which was a derivative rate paragraph under the Tariff Act of 1930, was given its own rate by the trade agreement. Defendant, accordingly, claims that for a rate other than the current rate to be applicable to merchandise dutiable by virtue of paragraph 1122, it also would have had to have been given its own rate under the trade agreement. While that may be true as far as the trade agreement negotiators are concerned, it is not claimed that the President could not have "untied" the rate applicable by virtue of paragraph 1122 from the "current" rate under paragraph 1108 and 1109(a). The right of the President to proclaim reduced rates of duty and to terminate such proclamations in whole or in part has been decided by the Court of Customs and Patent Appeals in Star-Kist Foods, Inc. v. United States (Bruno Scheidt, Party in Interest), 275 F.2d 472, 47 CCPA 52, C.A.D. 728. That court, in affirming this court in holding (41 Cust.Ct. 200, C.D. 2043) that the President had such authority, held that, under the provisions of section 350(a) of the Tariff Act of 1930, as modified, not only could the President modify existing duties and other import restrictions by entering into trade agreements and proclaiming rates of duty thereunder, but he could also terminate, *in whole or in part,* any proclamation at any time.

Presidential Proclamation No. 3160 herein under consideration indicates, in our opinion, that the President intended by the "excepting" clause to "untie" the rate applicable by virtue of paragraph 1122 from the rates proclaimed under paragraphs 1108 and 1109(a). Defendant's contention in this case that the rate to be applied herein must go back to the original tariff act, is, in our opinion, without merit. Here, the trade agreement rate was neither cancelled nor totally suspended by the proclamation but was suspended "only to the extent necessary to give effect to the foregoing provisions of this proclamation." It would, accordingly, appear that the President suspended the trade agreement proclamation only to the extent of providing that fabrics dutiable "directly" under paragraphs 1108 and 1109(a), when imported in excess of the quota, are dutiable at the higher rate. Otherwise, the trade agreement stands and reference may be made to it to find the rate applicable to other fabrics which are dutiable by virtue of paragraph 1122 at derivative rates.

The "excepting clause" in Presidential Proclamation No. 3160 must have some meaning and its language clearly was intended to "except" some articles from duty at the higher rate. In this regard, defendant's contention that the clause meant only to make clear that no direct rate modification action was intended as to other paragraphs, specifically paragraph 1119 of the act, is not convincing. The rate under the latter paragraph was set by the trade agreement and was no longer derivative. Accordingly, no "excepting" clause was needed to leave under paragraph 1119 the rate at the trade agreement rate.

Proclamation No. 3160 itself does not mention paragraph 1122 of the tariff act. It covers by its language fabrics described in paragraph 1108 or 1109(a) of Part I of schedule XX to the General Agreement on Tariffs and Trade or in paragraph 1109(a) in part I of schedule XX to the Torquay Protocol. It then excepts "articles dutiable at rates applicable to such fabrics [i. e. those described in said trade agreements] by virtue of any provision" of the tariff act "other than paragraph 1108 or 1109(a)." This, in our opinion, would preclude applying the higher rate to any merchandise that is dutiable by virtue of any provision of the tariff act other than paragraph 1108 or 1109(a). In the case at bar, while the difference on woven fabrics containing 17 percent or more of wool is computed in part by reference to rates provided in paragraph 1108 or 1109(a), such merchandise is actually made dutiable by paragraph 1122. If paragraph 1122 did not exist, the merchandise would be dutiable in accordance with its material of chief value and not under paragraph 1108 or 1109(a) at all.

It appears pertinent to note that, at the time the Wool Fabrics Reservation was invoked, the Congress was concerned with the effect on the domestic industry of increased importations of woolen and worsted fabrics and that it was deemed essential that a quota on imports of woolen fabrics be established for the protection of such industry. (Congressional Record, 84th Congress, 2d Session, vol. 102, part 4, pp. 4739–4740.) It would appear, therefore, that the invocation of the Wool Fabrics Reservation by the President was made in order to give increased protection to the domestic wool fabrics industry. By increasing the rates of duty on such fabrics in chief value of wool covered by paragraphs 1108 and 1109(a), such purpose could be accomplished without involving any further trade negotiation. However, "the excepting clause" indicates, in our opinion, that there was no intention to raise rates on other fabrics covered by the wool schedule. An increase on such fabrics might very well not have been needed, and it would be in accord with our foreign policy not to increase rates of duty in cases where it was deemed unnecessary.

For all of the reasons heretofore stated, we hold the wool portion of the fabrics here in question should have been as-

sessed with duty at the reduced rate established by the General Agreement on Tariffs and Trade, T.D. 51802, pertaining to paragraphs 1108 and 1109(a), that is, at 37½ cents per pound, plus 25 per centum ad valorem. The protest claim in this respect is sustained

Judgment will issue accordingly.

BECKWORTH, J., concurs.